The opinion of the majority of the court was delivered by
DRY, J.
Many errors are alleged in the proceedings in this case.
1. It is said, that the prosecution was in the name of the commonwealth, and not in the name of Taylor, as well for himself as for the commonwealth.
It cannot be said that the prosecution here is in the name of the commonwealth only. The warrants of commitment must of course run in her name. But they recite that the slaves were charged on the information of Taylor; the order awarding the summons states that the slaves were brought in, charged upon the information of James M. Taylor; and in the record of the hearing and judgment, he is said to be the informer, who caused the fact to be established. This sufficiently shews the style and character of the prosecution.
But the objection supposes that a presentment, information or indictment, in due form, is necessary. The act, however, evidently shews that this was not contemplated *or required. The whole proceeding may begin and end before the justice; or be carried on before monthly courts, having no authority to entertain such pleas. The slaves may be brought before a justice, without warrant; and if the master were present and fully heard, there might be nothing beyond the record of the judgment itself, if it sufficiently shewed the occasion and the grounds of it.
2. It is said, the slaves could not be apprehended without warrant, founded upon information on oath.. But the arrest of the slaves did not touch the liberty of the master. As to him, it was similar to the service of process by attachment to compel an appearance; or to a proceeding in rem,— the taking up of estrays, &c. Besides, it may be regarded as an arrest for a continu *426 ing offence, and analogous to an arrest flagrante delicto.
3. It was said that the master had no notice of the proceeding before the justice. But the justice did not decide finally. The proceeding before him was only inceptive. He did no more than commit the slaves until the next court, with a view to a proper trial. .The master then had a full hearing: and if it was irregular for the justice to commit the slaves, in the first instance, without a summons to and hearing of the master, it could not affect the subsequent proceedings of the court, otherwise regular; whatever personal consequences might attach to the magistrate.
4. It was said also, that the hustings court had no jurisdiction, because it did not appear that the case had been sent to it by any magistrate. But the act does not require the case to be sent, formally, to the court. It only authorizes the magistrate, in his discretion, to commmit the slave to the jail, there to be safely kept until the next court; which is precisely what was done by the mayor in these cases, as is seen by the warrants, which the defendant has made part of the record, if they were not so without the aid of the bill of exceptions.
*5. It is said that the court erred in not giving Abrahams his costs, on the dismission of the case as to the slave Gabriel.
It is a sufficient answer to say that this judgment cannot be drawn in question before us. There has been no writ of error awarded to it, nor any action had thereon by the circuit court.
6. The fifth objection, as stated in the record, we think answered by an inspection of the warrants, and the reason fourthly above assigned.
V. It is said, there was but one summons, and the hustings court had no author^ to divide the trial as they did.
In reply it may be said, that the informations were separate; that so were the warrants of commitment until the next court; that the summons was but notice to the party to appear, stating the matter of all the informations or charges; and that the defendant did appear, and had a full hearing upon the merits, on each charge; the court hearing each separately, and giving separate judgments. The summons is not like an information or indictment, nor do the usual objections against duplicity in pleading apply to it. If it performs the office of giving the party notice of the charges against him, and appoints him a day to be heard, especially if it brings him into court to be heard, upon the merits, —it has fulfilled all the objects of a notice, and objections to its form must be regarded as unimportant; more particularly so, if made for the first time in an appellate court.
Again, if the defendant Abrahams had appeared at the next court after the commitment of the slaves, without any summons, and the court had proceeded to hear the witnesses and give judgments in the manner set out in the record, we suppose that the defendant could not afterwards object that there had been no summons; and if so, a summons merely informal or double could hardly be considered as worse than none at all.
*8. It is objected that the court gave judgment for costs. But the statute itself authorizes this, in' saying that the slave may be sold for the fine and .all incidental charges. Costs are certainly charges incidental to the prosecution.
In all convictions for misdemeanors, with us, judgment is uniformly given that the commonwealth recover her costs; and even in cases of felony, though no formal judgment is given for them, yet the statute provides that the prisoner shall pay them, if his estate is able to do so. Tate’s Dig. 2d edi. p. 269, '& 44; 1 Rev. Code, ch. 169, 'i 31, p. 608.
9. It is alleged that the circuit court erred in giving costs and damages, on affirming the judgments. As to costs, the objection is answered above; and as to damages, we think that the error is merely formal. The judgments give no specific damages, but damages according to law; and the law giving none in such cases, the judgments have, in that particular, no effect. An amercement or fine is not a debt or damages, within the meaning of the law allowing damages on affirmance; Acts of 1830-31, ch. 11, ¿ 32; Tate’s Dig. 2d edi. p. 581, l 140; Suppl. to Rev. Code, p. 149.
10. It has been suggested in conference, that the defendant ought to have had a trial by jury. But the act of assembly evidently contemplates a summary proceeding, without pleadings or jury; and if it be said that the legislature could not deprive the party of a trial by jury, because it was a right secured to him by the constitution, it should be shewn that the constitution did secure him such trial in these cases, and that he could not be otherwise tried. Without deciding whether he was entitled to such trial, if he had asked it, in order to ascertain the facts, we are of opinion that there was no error in the court in not ordering a jury suo motu. The defendant’s objections, made in the hustings court, were to other matters, and none pointed to this right.
, *There were some other objections taken ; but having considered all that we deem material, we are of opinion to deny the writs of error.
DUNCAN, J. Without entering into a ' minute examination of the several grounds of error assigned in the petition, there is, in my opinion, a ground not assigned in the petition which ought to become the foundation for a writ of error in this case.
The proceeding is founded upon the 81st section of the statute concerning slaves, free negroes and mulattoes, which subjects to a heavy penalty the party who shall permit any slave owned or hired by him or her, “to go at large, or hire himself or herself out;” the slave to be held as security *427 for the payment of the fine and costs, or, in the discretion of the court, to be sold, and the entire proceeds of the sale, after the payment of the costs, to be divided, one third to go to the commonwealth, and the remaining two thirds to the informer.
In order to understand the nature of the objection which exists, in my opinion, to the proceedings in this cause, it may be well to refer for a moment to the peculiar, and, I may add, extraordinary effect of the statute upon the owner or holder of slaves falling within its operation. In the first place, any person, without an application to the judicial power of the country, may seize a slave and take him before a magistrate. The statute provides for no notice to the owner or hirer of the slave. The magistrate is forthwith to impose a fine, or, in his discretion, order the slave to jail until the next sitting of the court. The court is then authorized to impose a much larger fine than the magistrate could; or it may, in its discretion, order the slave to be sold, and the entire proceeds of sale to be divided in the manner already indicated. The court need not fine the party, but may at once forfeit the slave out and out, and ^divide the spoils between the informer and the commonwealth; and that too (if the statute is to be literally construed) without giving the owner any notice, and upon testimony entirely ex parte. It is not my purpose to object to this statute because of its peculiar harshness ; sound principles of public policy may have rendered it necessary, and it may be the duty of the courts to enforce it: but it is my purpose to shew that the legislature did not design, by the passage of that statute, to deprive the citizen of his constitutional right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, and to have a trial by jury. I do not mean to contend that the legislature have not a right to do so in cases like the present; that question does not necessarily arise here: but I mean to contend that according to the usual rules laid down for the construction of the statute laws of the land, the legislature did not intend to preclude parties falling within the operation of this particular statute, from having their rights decided according to the forms of proceeding known to the common law, and provided for by the constitution. I have already remarked that the statute contains no provision that the party who is to be subject to its operation shall have notice of any proceeding against him; nor does it provide for any form of trial whatever: and if its literal terms are alone to furnish the rule of proceeding, it will follow that a slave worth 500 dollars may be absolutely taken from the owner, and sold without any right of redemption; and that too without any notice to him, and without a jurjT of the vicinage to interpose their shield for his protection, I think, with due deference to the opinion of others, and especially of this court, all of whom differ from me on this question, that in a 1 country where the fundamental law declares “that in all capital or criminal prosecutions a man hath a right to be confronted with the accusers and witnesses, and to a speedy *trial by an impartial jury of his vicinage,” surprise may well be created by the suggestion that under the form of law a citizen may be convicted of a criminal offence, and absolutely forfeit his property, however valuable, without being confronted with his accusers and the witnesses against him, and without having a trial by an impartial jury of his vicinage. I know that the legislature in its wisdom has provided, that in a presentment to a county court, where the penalty does not exceed 5 dollars, or to the superior court where it does not exceed 20 dollars, these courts respectively may proceed to judgment without a jury: and the same statute carefully provides that the party shall be first served with process. Whether the party would in such case have a right to demand a jury, it is not necessary to decide; but it is very clear that in no case where there is presentment, and where the fine may exceed 20 dollars, can the superior court give judgment without the intervention of a jury, although the defendant does not appear. So under the gaming laws, the fine does not exceed 20 dollars for unlawful gaming, and the court may, on default, render judgment for the fine; but if the defendant appear and plead, he has a right to a trial by jury. Horton’s case, 1 Va. Cas. 335. Although the reasoning of the court in that case is not given, it may be inferred that the right to a jury was adjudged to be a constitutional right; because the general law, before noticed, expressly gives to the court, in all cases where the penalty does not exceed 20 dollars, the right to pronounce judgment without a jury. But it may be said that the general court were influenced, in their decision of Horton’s case, by the circumstance that upon conviction the party shall be held to give security for his good behaviour. With this, however, the jury have nothing to do: it is an additional punishment fixed by the law, and attaches to the conviction; and if the court be substituted for the jury, and determine the fact of guilt, the law attaches '*the additional punishment of giving security, in the same manner as if a jury had determined the fact of guilt. There is nothing, therefore, in that argument; and the general court in Horton’s case mlist have intended, that in criminal cases, although the penalty did not exceed 20 dollars, a party had a right to a trial by jury. And as I have before stated, in all cases where there is a presentment by a grand jury, and the fine may exceed 20 dollars, though it may be but one cent, the courts never give judgment without obtaining the verdict of a jury, although the defendant does not appear and plead. If this is necessary where a grand jury has found a presentment, in order to the protection of the citizen, how much stronger is the necessity where there has been no grand *428 jury, and the proceeding has perhaps been commenced by an irresponsible individual, who chooses to seize upon the property of a citizen' without the protection even of a warrant from a justice of the peace; where the fine may be upwards of 20 dollars (in this case one fine was for 35 dollars), and where the property so seized may be actually forfeited and sold without redemption. My argument therefore is, that the legislature did not intend that the court should try a case under this statute without a jury; that in all cases where the fine may exceed 20 dollars, the court are bound, under the existing law, to impanel a jury, whether the defendant be in default or not, unless, by the plain import of the statute, the right to a jury trial is taken away. When the legislature shall pass a law of that kind, there may be some found to question its power to do so. It has not done so in this case; nor can I anticipate the time when it will pass a law that shall in terms subject a citizen to a heavy penalty, like the present law, and say to him that he shall not be confronted with the accusers and witnesses, nor have a speedy trial by an impartial jury of his vicinage. And I lay down this proposition, which *seems to me incontrovertible; that where a statute creates an offence, and no mode is pointed out for the prosecution of it, the ancient proceeding by indictment or information is the appropriate mode, and the only mode that can be adopted. As the statute in question does not indicate the mode of prosecution when the case gets into court, an indictment or information is the proper course. At any rate, the party should have been summoned, and a jury impaneled to ascertain the facts and determine the amount of the fine. In the case under consideration the party was summoned, it is true; but by what authority? The statute did not require it. It was, I suppose, because it was a constitutional right; and the same article of the constitution shews that he had an equal right to a trial by jury.
It is said that the defendant did not demand a jury. But where a man indicted for a common misdemeanour does not appear, his cause must nevertheless be tried by a jury, because he may be fined more than 20 dollars, although he may be fined less; and this court would reverse any judgment rendered by an inferior court in such a case without having a jury impaneled, although the fine were but one cent, and the defendant had never appeared or demanded a trial by jury. And why? Because it was a right under the constitution to have his cause so tried. In this case one of the fines was 35 dollars, and the slave is held in custody’ for the pay’ment of it. I can see no reason for the difference, and I think there is none.
But the defendant in this case did appear; ^nd for aught that appears in the record, he may have claimed all his rights. The pleadings were ore tenus; he defended himself against the prosecution: and even if he had not done so, the amount of the fine being above 20 dollars, he was entitled to a trial by jury.
I think that a writ of error ought to be awarded in this case. Not that I would certainly reverse the judgment: *for, always diffident of my own opinions, I am the more so in this case, because I find all the judges differing from me. Perhaps my mind has been misled by a too jealous regard for the trial by jury.
Writs of error denied.